**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GLORIA WILLIAMS et al.,

        Plaintiffs,

v.                               Case No. 05-CV-73702-DT

JUDGE MARY BETH KELLY et al.,

        Defendants.

_____/

**ORDER GRANTING "MOTION FOR LEAVE . . ." AND**
**DISMISSING CASE WITHOUT PREJUDICE**

This is a case brought against a state court judge, the state court system in which she acts and Michigan's Secretary of State. Plaintiffs point to an injunctive ruling of the defendant judge holding, preliminarily, that one Plaintiff (the Detroit City Clerk) had acted illegally in her disposition of certain absentee ballot forms or applications for the same, and restraining her from continuing or multiplying the illegality. The effect of the ruling was, of course, limited to the parties properly before the court, but exactly because of that natural limitation, combined with the fact that a majority of the residents of the affected city are black, Plaintiffs purport that the injunction impinged unconstitutionally on their right to vote.

On October 20, 2005, the court ordered Plaintiffs to show cause why this case should not be dismissed. Plaintiffs timely responded on October 27, 2005.[1] Having

_____

[1] Intervener Maureen Taylor filed a "Motion for Leave to File Declaration. . ." on October 28, 2005, in which she requests that the court consider various documents in connection with its decision on whether to dismiss this case. The court finds no prejudice to Plaintiffs in considering the documents, and will grant Ms. Taylor's motion.

reviewed Plaintiffs' response, Ms. Taylor's submissions, and the relevant case law, the
court will dismiss this case.

## I.  BACKGROUND

On September 28, 2005, Plaintiffs filed the instant action against Defendants
Judge Mary Beth Kelly, the Wayne County Circuit Court, and Michigan Secretary of
State Terri Lynn Land.  Plaintiffs' complaint has two counts: "Violations of Equal
Protection and Voting Rights" (Count I) and "First Amendment Violations" (Count II).
The gravamen of Plaintiffs' claims, however, concerns an order issued in a related state
case pending in Wayne County Circuit Court.  The order, issued by Defendant Judge
Kelly on September 1, 2005, restrained Jackie Currie and Detroit Election Commission
from mailing out unsolicited absentee ballot applications.  In the case before this court,
Plaintiffs seek various forms of injunctive and declaratory relief by asking the court to
reverse or enjoin the operation of Judge Kelly's order and assume control over the state
court matter.  (*See* Compl. at 13-14, 16.)

Upon initial review of the complaint, it appeared to the court that it lacked subject
matter jurisdiction over these claims under the *Rooker-Feldman* doctrine.  *See Gottfried
v. Med. Planning Serve., Inc.*, 142 F.3d 326, 330 (6th Cir. 1998).  It also appeared to the
court that, in the event the *Rooker-Feldman* doctrine was not implicated, this case
should be dismissed without prejudice in light of the earlier filed and ongoing parallel
state court proceedings under the federal abstention doctrine that derives from the
United States Supreme Court's decision in *Colorado River Water Conservation Dist. v.
United States*, 424 U.S. 800 (1976).  The court thus directed Plaintiffs to show cause

why the case should not be dismissed pursuant to one of these two doctrines.  (*See* 10/20/05 "Order to Show Cause.")

## II.  DISCUSSION

### A.  The *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, inferior federal courts lack authority to perform appellate review of state court decisions.  *See, e.g.*, *Hart v. Comerica Bank*, 957 F. Supp. 958, 968-70 (E.D. Mich. 1997) (describing the *Rooker-Feldman* doctrine). In their October 27, 2005 response, Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply.

The *Rooker-Feldman* doctrine originated in two Supreme Court cases, *Rooker-Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).  The doctrine holds that lower federal courts do not have jurisdiction to review challenges to state court decisions, because such reviews may only be had in the Supreme Court pursuant to 28 U.S.C. § 1257.  *Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir. 2002).  The Supreme Court recently reaffirmed the doctrine, holding that the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corporation v. Saudi Basic Indus. Corp.*, --- U.S. ---, --- , 125 S.Ct. 1517, 1521-22 (2005)

The Sixth Circuit has held that the *Rooker-Feldman* doctrine applies to interlocutory orders and to orders of lower state courts.  *Pieper v. American Arbitration Association*, 336 F.3d 458, 462 (6th Cir. 2003); *see also Brown & Root, Inc. v.*

3

*Breckenridge,* 211 F.3d 194, 199 (4th Cir. 2000) ("It cannot be the meaning of *Rooker-Feldman* that, while the inferior federal courts are barred from reviewing *final* decisions of state courts, they are free to review interlocutory orders.") (quoting *Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 138 (2d Cir. 1997)).  Thus, the *Rooker-Feldman* doctrine may be applicable, even though Plaintiffs seek to attack a preliminary injunction issued by a lower state court.

The Sixth Circuit has held, however, that "the *Rooker-Feldman* doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court."  *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995).  Thus, in this circuit, the party against whom the doctrine is being applied must have been a party to the state proceedings in order for the federal proceedings to be barred.[2]  Despite Plaintiffs' attempts to cast it otherwise, this action is fundamentally an appeal of Judge Kelly's September 1, 2005 order, which the court would conclude that it is without jurisdiction to review, were it not for the rule announced in *Owens.*  The court,

---

[2] The court notes that other courts have disagreed with this approach.  *See, eg., Lemonds v. St. Louis County*, 222 F.3d 488, 495 (8th Cir. 2000) (citing various courts holding that the doctrine can apply against parties who did not participate in the state suit).  The *Lemonds* court found that "[i]nsisting that the parties must be identical, it seems to us, confuses the *Rooker-Feldman* doctrine with principles of res judicata . . . *Rooker-Feldman* is based squarely on federal law and is concerned with federalism and the proper delineation of the power of lower federal courts.  Such courts are simply without authority to review most state court judgments--regardless of who might request them to do so."  *Id.* The court finds this reasoning persuasive where, as here, the federal action is an obvious attempt to appeal a state court's order, the attorney of record on both cases is the same, and there are allegations of improper joinder.  (*See* 10/28/05 Motion [Dkt. # 17].)  Nonetheless, this court is bound by the clear rule announced in *Owens* that the doctrine does not bar an action "brought by a party that was not a party in the preceding action in state court."  *Owens*, 54 F.3d at 274.

however, is bound by Sixth Circuit precedent and accordingly must hold that the *Rooker-Feldman* doctrine does not bar Plaintiffs' suit.

### B. Abstention

While the court has concluded that the *Rooker-Feldman* doctrine does not preclude Plaintiffs' action, the court will nonetheless dismiss the case without prejudice in light of the earlier filed and ongoing parallel state court proceedings under the federal abstention doctrine that derives from the United States Supreme Court's decision in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme Court held that federal courts may abstain from hearing a case solely because similar pending state court litigation exists. *Colorado River*, 424 U.S. at 817; *Romine v. Compuserve Inc.*, 160 F.3d 337, 339 (6th Cir. 1998). "[D]espite the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' . . . considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine*, 160 F.3d at 339 (quoting *Colorado River*, 424 U.S. at 817.).

Declining jurisdiction under *Colorado River* rests on considerations of "wise judicial administration" and the general principle against duplicative litigation. *Colorado River*, 424 U.S. at 817. These considerations create a narrow exception where courts may decline jurisdiction in deference to parallel state court proceedings. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 6 (1983) (decision to dismiss based on parallel state-court action rests "on careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of

5

exercising jurisdiction"); *Great Earth Companies Inc. v.* Simons, 288 F.3d 878, 886 (6th Cir. 2002) ("[A] district court may sometimes be justified in abstaining from exercising jurisdiction in deference to a parallel state court proceeding.").

The threshold question in *Colorado River* abstention is whether there exists a proceeding in state court parallel to the federal court proceeding. *Romine*, 160 F.3d at 339; *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). The state court proceedings need not be identical, but merely "substantially similar." *Bates v. Van Buren Twp.*, 122 Fed. Appx. 803, No. 03-2258, 2004 WL 2792483, at *3 (6th Cir. Dec. 6, 2004); *Romine*, 160 F.3d at 340. There is also no requirement that the parties be identical in the two cases for the *Colorado River* doctrine to apply. *See Heitmanis v. Austin,* 899 F.2d 521, 528 (6th Cir. 1990) (citing *Lumen Construction v. Brant Construction,* 780 F.2d 691, 695 (7th Cir.1985)).

Here, the court finds that the threshold requirement is easily met. The two cases are substantially similar. Indeed, as the court noted above, this case is essentially nothing more than an appeal of the state court case. *See Am. Disposal Servs. Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988) (finding abstention appropriate when "[w]hat has essentially happened is that on having suffered its first adverse interlocutory ruling, plaintiff suddenly proposes to neglect its own chosen state forum to start over in a wholly different court system . . . . In the specific circumstances presented, federal court exercise of jurisdiction would seem inappropriate at this time, improvident, uneconomical, and intrusive."). Both cases turn on the propriety and validity of Judge Kelly's injunction, and the resulting consequences. That this case involves additional parties or different legal theories to invalidate the injunction does not warrant a contrary

6

conclusion.  *See Romine*, 160 F.3d at 340 ("If the rule were otherwise, the *Colorado*

*River* doctrine could be entirely avoided by the simple expedient of naming additional

parties" or making slight variations of the legal theories invoked to support recovery);

*Telesco v. Telesco Fuel & Masons' Materials Inc.*, 765 F.2d 356, 362 (2d Cir. 1985)

("Merely raising an alternative theory of recovery, which may still be raised in state

court, is not enough to differentiate the federal suit from the state suit.") (citing *Olmstead*

*v. Amoco Oil Co.*, 725 F.2d 627, 631-31 (11th Cir. 1984)).

Because the court finds that the federal and state court proceedings are

substantially similar, it turns to the factors courts must examine in determining whether

judicial economy and federal-state comity warrant abstention.  The Sixth Circuit Court of

Appeals has summarized the various factors to consider in the *Colorado River* analysis

as follows:

> (1) whether the state court has assumed jurisdiction over any res or
> property; (2) whether the federal forum is less convenient to the parties;
> (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction
> was obtained .... (5) whether the source of governing law is state or
> federal; (6) the adequacy of the state court action to protect the federal
> plaintiff's rights; (7) the relative progress of the state and federal
> proceedings; and, (8) the presence or absence of concurrent jurisdiction.
> These factors, however, do not comprise a mechanical checklist.  Rather,
> they require "a careful balancing of the important factors as they apply in a
> give[n] case" depending on the particular facts at hand.

*Romine,* 160 F.3d at 340-41 (citations omitted).

Balancing of these factors weighs strongly in favor of abstention.  (1) and (2) are

the only factors that arguably weigh against abstention, the first only minimally: the state

court does not involve a res or property[3] and there is no inconvenience litigating the case in a federal court in Detroit as opposed to a state court also sited in Detroit.

The rest of the factors, however, weigh in strong favor of respecting federal-state comity and declining jurisdiction in favor of judicial economy. The Supreme Court has noted that "the consideration that was paramount in *Colorado River* itself [was] the danger of piecemeal litigation." *Moses H. Cone*, 460 U.S. at 19. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341 (citing *LaDuke v. Burlington North R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989)). In this case, the resolution of this action revolves around whether the issues were "correctly" or constitutionally decided in the state court action, which necessarily duplicates judicial effort.

Further, the state court action was initiated prior to this action, and has proceeded at a relatively quick pace (notwithstanding Plaintiffs' counsel's improvident removal and other apparent attempts to delay the state court action). Moreover, while Plaintiffs try to cast this action as raising constitutional concerns, it is, at heart, a matter of state election law. To the extent that federal constitutional issues are implicated, the state courts are well-equipped to handle them. Thus, the court finds the balance of factors weighs in favor of abstention.

---

[3] While the case does not involve "property" over which the state court has assumed jurisdiction, its on-going review of certain Detroit election procedures through appointed monitors involves analogous concerns weighing in favor of abstention. (*See* 10/18/05 "Motion to Dismiss" at 8.)

8

Courts have also examined an additional aspect of whether the state forum is adequate to protect the federal plaintiff's rights: "whether the federal or state suit is filed ... for a vexatious, reactive or tactical reason."  *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives Inc.*, 48 F.3d 294, 299 (8th Cir. 1995); *see also Romine*, 160 F.3d at 342 (referring to a potential "forum shopping ploy" in its analysis).   This additional factor also weighs in favor of abstention.  This is Plaintiffs' counsel's second attempt to have a federal court review Judge Kelly's injunction.  The first attempt, in case number 05-73418, was filed the day after Judge Kelly's initial ruling and resulted in an order of remand.  (*See* 05-73418, 9/14/05 Order.)  The timing of the filing of the first case, preceding by one day the state court defendants' violation of Judge Kelly's orally-stated injunction of September 1, 2005, seems to the court an obvious "tactical" maneuver, designed both to allow the state court defendants time to violate Judge Kelly's injunction and to avoid the entry of a written order memorializing the injunction. (*See* "Motion for Leave to File Declaration . . ." at Ex. 1(C).)   Against that backdrop the court reviews the filing of this second, nearly-identical, case by the same attorney for the same principal plaintiff.  The second case was initiated just before the time that the state court contempt hearing was to begin.  The second suit evinces an apparent attempt to either delay the imposition of sanctions, obtain a disqualification of Judge Kelly, or both.   (*See id.* at Ex. 1 ¶¶ 9 & 12 and Ex. 1(B).)  This timing appears to the court to be indicative of forum shopping, which is yet another factor weighing in favor of abstention.

Having concluded that abstention is appropriate, the court now turns to whether it will stay or dismiss this action.  There is one unpublished Sixth Circuit case "requiring a

stay of proceedings rather than a dismissal in *Colorado River* abstention cases."  *See*

*Bates v. Van Buren Twp.*, 122 Fed. Appx. 803, No. 03-2258, 2004 WL 2792483 (6th Cir.

Dec. 6, 2004).  Nonetheless, there are other unpublished cases affirming dismissals.

*See Preston v. Erikson*, No. 95-3751, 1997 WL 14418 at * 4 (6th Cir. Jan. 14, 1997)

(concluding dismissal appropriate under *Colorado River* doctrine, which "permits a

federal court to stay or dismiss an action when a parallel state court action is pending

and extraordinary circumstances exist"); *White v. Morris*, No. 92-3190, 1992 WL 188117

at *1 (6th Cir. Aug. 6, 1992) ("Upon review, we conclude that the district court correctly

determined that a stay was inappropriate but that dismissal was warranted in the

interests of 'wise judicial administration' under the authority of *Colorado River* . . .").

Moreover, the circumstances which favored a stay in *Bates* are simply not present here.

There are no statute of limitations implications in this case, nor will there necessarily be

any added costs imposed on Plaintiffs, inasmuch as the court will allow Plaintiffs the

option of either filing a new lawsuit or filing a motion to reinstate, which would not

require filing fees.  *See Bates*, 122 Fed. Appx. at 809.  This option negates the *Bates*

court's concern that a new case will possibly be assigned to a new judge.  *See id.*

Indeed, even if Plaintiffs were to file a new complaint, this district's local rules provide

for a mechanism whereby related cases can be assigned to the original judge, so long

as the attorneys properly complete the civil cover sheet.[4]  *See* E.D. Mich. LR 83.11.

Thus, because the concerns listed in *Bates* are not present in this case, the court

concludes that a dismissal rather than a stay will better effectuate the comity and

---

[4] This is a requirement ignored by Plaintiffs' counsel in filing the instant action.
(*See* 10/20/2005 "Order to Show Cause" at 1 n.1.)

10

federalism underpinnings of the *Colorado River* doctrine.  The court's decision to

dismiss and not stay this case is based in large part on its belief that the majority of

Plaintiffs' complaints will likely disappear as the case proceeds in state court and Judge

Kelly's order is either vacated on appeal or held applicable to the entire state of

Michigan.  Further, inasmuch as Judge Kelly's injunction is, at this point, only

preliminary, it must be recognized that *preliminary* may never ripen into *permanent* but

rather end under its own terms.  For these reasons, the court finds the most efficient

way to proceed under the guidelines of the *Colorado River* doctrine is to dismiss the

case without prejudice.[5]

Moreover, even if the court were to find that the *Colorado River* doctrine did not

require dismissal, the court would find that the unique circumstances of this case would

nonetheless warrant abstention under Sixth Circuit precedent.  The Sixth Circuit has

stated that it is "concerned about the principles underlying abstention, not its precise

limitations."  *Gottfried v. Medical Planning Services, Inc.*, 142 F.3d 326, 330.  To that

end, the court will "keep in mind the Supreme Court's recent advice that '[t]he various

types of abstention are not rigid pigeon holes' but instead 'reflect a complex of

considerations designed to soften the tensions inherent' in a dual state-federal system

of justice."  *Id.* (citing *Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11-12 n. 9 (1987)).

In *Gottfried,* after finding that the federal action was not barred by the *Rooker-*

*Feldman*, *Younger*, or *Colorado River* doctrines, the Sixth Circuit nonetheless found

abstention appropriate where the plaintiff sought to challenge a state court injunction on

---

[5]  A dismissal will also allow Plaintiffs and their attorneys to focus or reevaluate
their allegations in light of the court's Rule 11 concerns discussed below.

constitutional grounds.  *Id.* at 330.  The Sixth Circuit noted the recent trend in such cases that "those who want to exercise their speech rights but do not wish to violate the injunction often file suit in federal court against a host of state and local officials for every imaginable constitutional violation, rather than simply asking the state judge who has ongoing jurisdiction over the matter for relief."  *Id.*  The court disapproved of this tactic, instead finding that "[u]nder these circumstances, we believe equity, comity, and our federalist judicial system require the federal court to give the state judge the first chance to bring the injunction into compliance with constitutional law."  *Id.*  The court determined that abstaining in deference to the state court would (1) allow the state court the first opportunity to review the constitutional challenges; (2) possibly obviate the need for federal review; and (3) afford the state courts "the respect they are due as our equals in a federalist judicial system."  *Id.* at 332.[6]  Finally, the court held that allowing the challenge to proceed through the state court system first was "more effective and less contentious than asking a federal court to enjoin a state court or to declare its injunctions unconstitutional."  *Id.* at 333.  For these reasons, the Sixth Circuit held that "a federal court should abstain when a nonparty to a state court injunction brings a First Amendment challenge to the injunction in federal court before requesting relief from the state court."  *Id.* at 332.

These same considerations favor abstention in this case.  Despite Plaintiffs' attempts to cast their complaint in constitutional terms, this case raises fundamentally

---

[6] The Sixth Circuit ordered a stay, rather than a dismissal, because there was not an ongoing appeal in the state courts raising the same constitutional issues.  *See Gottfreid*, 142 F.3d at 332-33.  In this case, as earlier stated, the ongoing state case provides a forum for plaintiffs to raise their constitutional arguments.

state concerns regarding a state election.  While Plaintiffs argue that their complaint is

founded on separate federal issues, even a cursory review of their complaint reveals

that, ultimately, Plaintiffs seek to have this court disrupt the state court proceedings and

somehow vacate Judge Kelly's order.  Indeed, Plaintiffs' true intentions are reflected in

their repeated requests that the court "declare the ruling invalid," "enjoin the ruling,"

"assume control over [the state court] matter," "revers[e] and control[ ] the ruling of

Defendants [Judge Kelly and Wayne County Circuit Court]," "direct[ ] Defendant  . . .

Land to cease and desist from making any statements [related to the state court

injunction]," order Defendants to show cause as to why Defendants should not reverse

the injunction, and "stop or otherwise curtail" the injunction.   (Compl. at 10, 13-14, 16.)

        Such requests implicate obvious federalism concerns and are better suited to be

litigated first in the state court system.

        This conclusion is also supported by the Supreme Court's opinion in *Pulliam v.

Allen*, 466 U.S. 522 (1984).  In *Pulliam*, the Supreme Court held that judicial immunity is

not a bar to suits seeking prospective injunctive relief against a judicial officer under 42

U.S.C. § 1983.[7]  *Pulliam*, 466 U.S. 522.  In so holding, however, the Supreme Court

expressly reaffirmed the principles of federalism and comity that would nonetheless

require abstention in cases such as the one currently before this court:

_____

        [7]  In this case, however, if the court were not to abstain, the court would be
inclined to find that, contrary to Plaintiffs' argument, a good portion of their complaint is
not aimed at obtaining *prospective* injunctive relief, in that it seeks to overturn an
existing state court order.  Further, because state courts provide Plaintiffs with an
adequate remedy in the form of intervention in the state court and appeals, the court
would likely dismiss Judge Kelly from this case in any event.  *See Sekya v. Corrigan*, 46
Fed. Appx. 260 (6th Cir. 2002) (citing *Pulliam* and affirming dismissal where federal
court plaintiff sought order requiring state court judge rule on the plaintiff's motion for
reconsideration in state court).

> The other concern raised by collateral injunctive relief against a judge, particularly when that injunctive relief is available through § 1983, relates to the proper functioning of federal-state relations. *Federal judges, it is urged, should not sit in constant supervision of the actions of state judicial officers, whatever the scope of authority under § 1983 for issuing an injunction against a judge. . . .* The concern . . . has been addressed as a matter of comity and federalism, independent of principles of judicial immunity. *We reaffirm the validity of those principles and the need for restraint by federal courts called on to enjoin the actions of state judicial officers.*

*Id.* at 539 (emphases added). The Sixth Circuit, in an unpublished but instructive case, has interpreted this language to hold that:

> The clear implication of this language is that although the doctrine of judicial immunity does not prevent a federal court from granting prospective injunctive relief against a state court judge, the principles of federalism may require that a federal court abstain from granting such relief if it unduly interferes with the independence of the state court.

*Belill v. Hummel,* 835 F.2d 877, 1987 WL 24114, *4 (6th Cir. Dec. 1, 1987) In *Belill*, the Sixth Circuit relied on "the fundamental precepts of federalism" to uphold the district court's refusal to expunge the plaintiff's criminal record. *Id.* at *4-5. The court held that "the federal court should refrain from issuing such an order which would necessarily imply that plaintiff's state court conviction was invalid. Plaintiff must first seek redress through the state court system before presenting his claim to the federal courts." *Id.* at *5.

Similarly, here, the court finds abstention warranted where Plaintiffs seek to have this court overturn the state court's rulings and insert itself into the state court matter. Absent unusual circumstances not present here, the court refuses to interfere in the underlying state court proceedings. *See O'Shea v. Littleton*, 414 U.S. 488, 499 (1974) (quoting *Mitchum v. Foster*, 407 U.S. 225, 243 (1972)s ("[T]he principles of equity, comity, and federalism . . . must restrain a federal court when asked to enjoin a state

14

court proceeding."); *see also Lambert v. Turner*, 525 F.2d 1101, 1103 (6th Cir. 1975)

("[C]onsiderations of comity preclude a federal court from supervising the operations of

a state court in the manner sought in the amended complaint.").

Plaintiffs ask the court to usurp the state court's resolution of a matter involving

allegations of potentially serious violations of state election laws by City of Detroit

elections officials.  The court finds that the exercise of federal jurisdiction is, at this

point, inappropriate and will therefore abstain under the *Colorado River* doctrine and

Sixth Circuit precedent.  If Plaintiffs wish to pursue their claims, they must first avail

themselves of the state procedural mechanisms available to them.  In the meantime,

this case will be dismissed without prejudice.

If Plaintiffs wish to reinstate this action after the state proceedings, including any

appeals, are concluded, they may do so by filing a motion to reinstate in this court or by

filing a new complaint.  If the latter option is utilized, Plaintiffs and Plaintiffs' counsel are

specifically instructed that if they file a new lawsuit asserting substantially the same

allegations, with substantially the same parties or seeking substantially the same relief,

this case must be listed prominently on the civil cover sheet as a previously dismissed

or related case.

Further, if Plaintiffs move to reinstate this case, the court will examine the

allegations closely to determine whether the obligations of Federal Rule of Civil

Procedure 11 have been met.[8]  While the court's conclusion that the *Colorado River*

---

[8]  In the court's view, it has required substantial restraint to avoid ordering
Plaintiffs and Plaintiffs' counsel to show cause why they should not be sanctioned in
filing this case. It appears to the court that Plaintiffs' counsel has engaged in tactics that
are, at the least, questionable in the initiation of this federal lawsuit.  As discussed
above, the timing of the federal action suggests that this federal court is being used as a

15

doctrine applies to this case moots Defendants' motion to dismiss, Plaintiffs should be on notice that the court is inclined to find that, at a minimum, Wayne County Circuit Court, a division of the State of Michigan's one court of justice, is entitled to 11th Amendment immunity, and that Judge Kelly is entitled to absolute immunity. (*See, supra*, note 7.)  The court is also inclined to believe that the allegations, as presented, fail to state a claim upon which relief can be granted.  Plaintiffs' chief complaint is that Judge Kelly's injunction applies only to the City of Detroit.  As this court has already held in a companion case, this fact is not remarkable in that it is only Detroit officials who are the litigants in the case pending before Judge Kelly. (*See* 05-73418, 9/14/05 Order.)  For this reason, Plaintiffs must be prepared to support their position with relevant law should they choose to reinstate substantially the same case after the state court proceedings are concluded.

### III.  CONCLUSION

For the reasons discussed above, IT IS ORDERED that Maureen Taylor's "Motion for Leave to File Declaration . . ." [Dkt. # 18] is GRANTED.

---

way to avoid proper orders of a state court or at least the state court judge's continued presence in the proceedings. The fact that this court's prior case was not listed as a related case on the civil cover sheet, while the state court case was listed, suggests to the court further attempts at judge shopping. (*See* 10/20/2005 "Order to Show Cause" at 1 n.1.)  Finally, there is an allegation, supported by evidence, that Plaintiff's counsel, or others acting in concert with him, have acted dishonestly in the solicitation of plaintiffs for this lawsuit.  (*See* 10/28/2005 "Motion for Order to Show Cause".)  The court has the authority to engage in further investigation relating to all of these circumstances.

16

IT IS FURTHER ORDERED that Plaintiffs' complaint is DISMISSED without prejudice and that Defendants' "Motion to Dismiss" [Dkt. # 9] is therefore DENIED as moot.

                                    S/Robert H. Cleland
                                    ROBERT H. CLELAND
                                    UNITED STATES DISTRICT JUDGE
Dated:  November 2, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 2, 2005, by electronic and/or ordinary mail.

                                    S/Lisa Wagner
                                    Case Manager and Deputy Clerk
                                    (313) 234-5522

S:\Cleland\JUDGE'S DESK\Even Orders\05-73702.WILLIAMS.Dismissal.Rooker.ColoradoRiver.2.wpd